## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In Re:

MIRABILIS VENTURES, INC.,

      Debtor.

_____/

CASE NO.: 6:08-bk-04327-KSJ

CHAPTER 11

MIRABILIS VENTURES, INC.,

      Plaintiff,

v.

MARCUM RACHLIN, a division of
MARCUM LLP fka RACHLIN, LLP fka
RACHLIN COHEN & HOLTZ, LLP,
a foreign limited liability partnership;
LAURIE S.  HOLTZ, an individual,
and JOSE I. MARRERO, an
individual,

      Defendants.

_____/

ADV. PRO. NO.: 6:08-ap-00223-KSJ

## FIRST AMENDED COMPLAINT

Plaintiff, Mirabilis Ventures, Inc., ("MVI" or "Mirabilis"), by and through its

undersigned counsel, and pursuant to Rule 7003 and Rule 7015, *Federal Rules of*

*Bankruptcy Procedure*, hereby files its first amended complaint and sues Defendants,

MARCUM RACHLIN, a division of MARCUM LLP f/k/a RACHLIN, LLP f/k/a

RACHLIN COHEN & HOLTZ, LLP,  a foreign limited liability partnership ("Rachlin")

LAURIE S.  HOLTZ, an  individual  ("Holtz"),  and  JOSE  I.  MARRERO

("Marrero")(collectively, "Defendants") and in support states as follows:

## I.  NATURE OF THE ACTION

This is an action for compensatory damages against the Defendants stemming from their involvement and representation of MVI and its subsidiaries including but not limited to AEM, Inc. ("AEM").  In summation, Holtz and Marrero as accountants/agents of Rachlin, provided tax advice and otherwise consulted Mirabilis regarding the legality, treatment and use of the acquisition of other entities' payroll tax funds that were to be paid to the IRS.  Rachlin failed to properly supervise the activity of Holtz and Marrero. Due to Holtz's, Marrero's and Rachlin's actions and inactions, Mirabilis has sustained damages against Defendants resulting from the same.

## II.  JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157 because it arises in and is related to a case under Title 11 of the United States Code.

2.      Defendants are subject to the personal jurisdiction of this Court because many of the tortuous acts alleged herein occurred in or were directed to the state of Florida.    Furthermore, Defendants are also subject to personal jurisdiction pursuant to 18 U.S.C. §1965(d).  Defendant, Rachlin, is a foreign professional association with a principal place of business in Dade County, Florida.

3.      Venue is proper in this district pursuant to 28 U.S.C. §1409, 28 U.S.C. 1391(b), and 18 U.S.C. §1965(c).

4.      This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and 28 U.S.C. §157(b)(2)(O).

### III.  **THE PARTIES AND OTHER RELEVANT ENTITIES**

5.       Plaintiff, MVI, is a Nevada corporation with its principal place of business located at 341 N. Maitland Ave., Suite 210 in Maitland, Florida.

6.       Rachlin is a foreign limited liability partnership with a principal place of business in Dade County, Florida.

7.       Upon information and belief, Holtz is a citizen and resident of Dade County, Florida, and sui juris, who was at all times relevant to the events described herein a Partner, employee and agent of Rachlin and was acting within the scope of his partnership, employment and that agency.

8.       Upon information and belief, Marrero is a citizen and resident of Dade County, Florida, and sui juris, was at all times material hereto a principal of Rachlin.

9.       All conditions precedent to the bringing of this action has occurred, or their performance has been waived by Defendants.

### IV.  **THE SUNSHINE COMPANIES**

10.       In 2004, Presidion Corporation ("Presidion") entered into a consulting agreement with AQMI Strategy Corporation ("AQMI") to provide consulting work regarding the divestiture and liquidation of certain wholly owned subsidiaries of Presidion.

11.       The Presidion subsidiaries are more commonly know as The Sunshine Companies ("Sunshine Companies").[1]

12.       The deal was an arms-length transaction and both parties were represented by counsel.

---

[1] Consisting of (1) Sunshine Staff Leasing, Inc.; (2) Sunshine Companies II, Inc.; (3) Sunshine Companies III, Inc.; and (4) Sunshine Companies IV, Inc.

13.    During this time, Presidion and the Sunshine Companies had a large amount of outstanding payroll tax liabilities.

14.    AQMI's engagement and proposed resolution centered on the deconsolidation, divestiture and liquidation of the Sunshine Companies.

15.    AQMI's strategy regarding liquidations involved using the funds resulting from the divestiture to pay creditors, including the Internal Revenue Service ("IRS").

16.    The proposed strategy allowed Presidion to deconsolidate its financials and separate itself from the excessive liabilities associated with its subsidiaries, allowing it to continue to conduct business as a going concern ("Sunshine Companies Plan").

17.    On or about January 6, 2005, AQMI and its various professionals, including Holtz and Marrero, met with IRS revenue officer, Judith Berkowitz, to inform the IRS of the estimated tax debt of the Sunshine Companies and the plan for resolution of the debt.

18.    The IRS never objected to the plan or otherwise raised any issues regarding the illegality of the Sunshine Companies Plan.

## V.  THE PRESIDION REORGANIZATION PLAN AND MIRABILIS VENTURES, INC.

19.    On October 28, 2004, the entity known as Stellar Industries, Inc. changed its name to Mirabilis Ventures, Inc.  At its inception, Mirabilis had only one shareholder (Yaniv Amar) and only one director (Gailie Hartman).  A true and correct copy of the Restated Articles of Incorporation and Written Action of The Directors of Mirabilis are attached hereto as **composite Exhibit "A".**

20.    Mirabilis was a private equity company, which acquired companies that had a strategic fit into its unique business model.  Acquired companies either fit into the

four primary specialization categories – real estate, construction, chain store development, and human resources – or they provided necessary goods and services to the core companies.

21.    In May 2005, AQMI was approached again by Presidion regarding further problems with Presidion's remaining professional employer organization ("PEO") operations, particularly Presidion Solutions, Inc. ("PSI") and its wholly-owned PEO operating subsidiaries, Professional Benefits Solutions, Inc. a/k/a Presidion Solutions, VII, Inc. ("PBS") and Paradyme, Inc. ("Paradyme") a/k/a Presidion Solutions, VI, Inc.

22.    The problems stemmed from the threatened cancellation of worker's compensation insurance coverage, shortfall of working capital for PEO operations, and a tax liability which had increased to over three million dollars since January 2005.

23.    Drawing from what appeared to be the success of the previous Sunshine Companies Plan, AQMI proposed a plan of reorganization designed to restore, preserve and maximize the inherent value of Presidion's assets ("PBS Plan").

24.    The PBS plan would utilize Mirabilis, and specifically, AEM, to acquire and rehabilitate the Presidion PEO book of business.

25.    A key element of the reorganization plan called for the interim nonpayment of federal employment taxes by PBS.

26.    The collected taxes would then be truthfully reported but not remitted.

27.    The collected, yet unpaid, taxes would then be used to fund the PEO operations, particularly paying workers' compensation insurance premiums, reorganize advisors and secured creditors.

28.     The collection and use of the unpaid taxes would allow the business to continue until it was restored to a position wherein it could pay all of its outstanding liabilities, including the outstanding tax liabilities.

29.     In order for the PBS Plan to be accomplished, the Sunshine Plan would also have to be finalized, drawing the two plans together.

30.     The PBS Plan and Sunshine Plan were then brought to the attention of Mirabilis for consideration.

## VI.   RETENTION AND INVOLVEMENT OF LAURIE HOLTZ BY MIRABILIS VENTURES, INC. AND ITS SUBSIDIARIES AND THE APPROVAL OF THE PBS PLAN

31.     In 2004, Holtz was originally retained by AQMI to give tax advice regarding the Sunshine Companies Plan and to assist with its tax and accounting related matters.

32.     Upon information and belief, Holtz and Marrero were employed by Rachlin for all times relevant for purposes of this Amended Complaint.

33.     On December 21, 2004, drawing upon his knowledge of the common issues of fact and law from the Sunshine Companies Plan among other represented qualifications, Defendants began consulting or otherwise advising Mirabilis and its subsidiaries.

34.     During this time, Holtz and Marrero began providing tax advice to Mirabilis and its subsidiaries while Holtz and Marrero were employed by Rachlin.  A true and correct copy of the January 4, 2005 memorandum detailing some of Holtz's preliminary tasks and duties under the PBS Plan and Sunshine Plan is attached hereto as **Exhibit "B"**.

35.    In January 2006, Holtz became so involved with the operations of Mirabilis, that Mirabilis suggested, and Holtz and Rachlin agreed, to use Mirabilis' office space in its Orlando office as its hub for continued representation of Mirabilis. A true and correct copy of the letter confirming Rachlin's continued involvement with Mirabilis is attached hereto as **Exhibit "C"**.

36.    Shortly thereafter, Holtz was appointed to the Executive Committee of Mirabilis and later became the Chairman of Mirabilis' Board of Directors. A true and correct copy of the March 23, 2006 minutes of Mirabilis' Board of Directors meeting is attached hereto as **Exhibit "D"**. A true and correct copy of Mirabilis' organization chart confirming that Holtz was the Chairman of the Board is attached hereto as **Exhibit "E"**.

37.    Holtz even attended meetings with the IRS during his employment at Rachlin and as a board member of Mirabilis, regarding the legality of the PBS Plan. A true and correct copy of the flight logs evidencing that in January and February 2006, Holtz took regular flights on the Mirabilis jet to discuss the implications and legality of the PBS Plan with the IRS is attached hereto as **composite Exhibit "F"**.

38.    After these meeting, specifically on April 18, 2006, Holtz began regular discussions regarding the tax plan with officers and board members of Mirabilis. A true and correct copy of the correspondence from Frank Hailstones to Holtz and is attached hereto as **Exhibit "G"**.

39.    An accountant-client relationship existed between Defendants and Mirabilis.

40.    Holtz and Marrero knew or should have known that Mirabilis relied on their tax advice when determining whether the PBS plan should be approved.

41.    On July 28, 2005, after receiving advice from Holtz, Marrero and other professionals, Mirabilis and AEM began managing the PEO book of business, its financial affairs and the PEO operations.

42.    AEM and Mirabilis took over the PEO book of business with the belief that their actions were legal and proper based on the representations of Holtz, Marrero and other professionals.  Upon information and belief, and all relevant times, independent members of Mirabilis' board of directors would have taken appropriate remedial actions if the Defendants had disclosed that Mirabilis would be responsible for the subject payroll taxes and that the PBS Plan would subject Mirabilis to possible criminal and civil penalties.

43.    From 2005 through 2007, Rachlin and Holtz were paid thousands of dollars (the "Funds") for tax advice given to Mirabilis.  A true and correct copy of Mirabilis' general ledger evidencing payments made from Mirabilis to Rachlin for services rendered is attached hereto as **Exhibit "H."**

## VII.   THE UNITED STATES OF AMERICA'S CIVIL FORFEITURE ACTION AGAINST MIRABILIS

44.    In late November 2006, Mirabilis executives were notified that a federal grand jury investigation had commenced with regard to the operations of Presidion and Mirabilis.

45.    Subsequent to this time, the United States of America filed an *in rem* civil forfeiture action against the assets of Mirabilis.

46.    By January 2007, Mirabilis and AEM had laid off all non-key employees, including a number of officers and managers, and had closed a majority of its businesses.

47.     The layoffs allowed Mirabilis to sustain operations and remain current with its taxes.

48.     Unfortunately, news of the federal grand jury investigation and nonpayment of payroll taxes leaked to the press, resulting in several negative articles, which decimated the PEO book of business and destroyed the operations of Mirabilis.

49.     On May 1, 2007, Mirabilis' subsidiaries, AEM and National MedStaff sold their PEO businesses to O2HR, LLC for approximately Two Million Five Hundred Thousand Dollars ($2,500,000.00).

50.     On May 27, 2008, the Debtor filed its voluntary petition for relief with the Middle District of Florida Bankruptcy Court (the "Petition Date").

51.     The Chapter 11 filing came primarily as a result of an *in rem* civil forfeiture action filed by the United States of America against certain assets of Mirabilis, which effectively caused Mirabilis to be unable to pursue claims and litigation against various third parties.

52.     The *in rem* civil forfeiture action was filed based upon the criminal investigation of Mr. Amodeo.

53.     In an effort to preserve equity for all of its creditors and other potential creditors, Mirabilis deemed a Chapter 11 liquidation plan as in the best interest of all its creditors.

## VIII.  <u>COUNT I – NEGLIGENCE (ALL DEFENDANTS)</u>

54.     MVI re-alleges and re-states paragraphs 1 through 53 as if fully set forth herein.

55.    At all times material hereto, an accountant-client relationship existed between MVI and Defendants.

56.    By accepting employment to render tax advice to MVI, Defendants had a duty to use such skill, prudence, and diligence as other accountants of ordinary skill and capacity commonly possesses and exercises in the performance of the tasks they undertake.

57.    Defendants breached their aforementioned duties and deviated from the applicable standards of professional care, by virtue of their conduct described hereinabove, including but not limited to, Defendants failure to advise MVI, its subsidiaries and related companies that the Sunshine Companies Plan, PBS Plan and MVI's operations could result in criminal and civil liability for MVI, its subsidiaries and related companies.

58.    As a direct and proximate result of the Defendants' negligence, MVI, its subsidiaries and related companies have suffered damage to their business, property, as well as its creditors, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (3) awarding court costs; and (4) awarding any other relief this Court deems appropriate.

## IX.  COUNT II – BREACH OF FIDUCIARY DUTY (ALL DEFENDANTS)

59.    MVI re-alleges and re-states paragraphs 1 through 53 as if fully set forth herein.

60.    At all times material hereto, a fiduciary relationship existed between MVI, its subsidiaries and related companies and Defendants, particularly, an accountant-client relationship existed between MVI, its subsidiaries and related companies and Defendants.

61.    Defendants each breached their fiduciary duties to MVI, its subsidiaries and related companies by virtue of their conduct described hereinabove, particularly, Defendants each failed to advise MVI that entities with the authority to exercise significant control over the financial affairs of a company have a statutory duty to collect, withhold, truthfully account for, and pay over payroll "trust fund" taxes and that failure to intervene to stop and/or mitigate the nonpayment of collected payroll "trust fund" taxes collected could result in significant liability, particularly criminal liability, despite multiple requests from MVI as to the potential consequences of the Sunshine Companies Plan, PBS Plan and MVI's operations.

62.    As a direct and proximate result of Defendants' breach of fiduciary duties, MVI, its subsidiaries and related companies have been damaged in their business and property, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (3) awarding court costs; and (4) awarding any other relief this Court deems appropriate.

## X.  COUNT III
## NEGLIGENT MISREPRESENTATION (ALL DEFENDANTS)

63.    MVI re-alleges and re-states paragraphs 1 through 53 as if fully set forth herein.

64.    This is a cause of action against Defendants for negligent misrepresentation.

65.    Defendants knew, or should have known, that MVI, its subsidiaries and related companies were relying on the information supplied and representations and statements made by Defendants in connection with their representation of MVI's entities in deciding how to run and operate their businesses.

66.    Defendants owed MVI, its subsidiaries and related companies a duty of reasonable care, skill and diligence to ensure that all of the information supplied and representations and statements made to or on behalf of MVI and its related entities were true and accurate.    This duty required Defendants to reasonably investigate the facts pertinent to the representation and provide MVI and its related entities with true and accurate information in connection with their legal representation.

67.    Defendants breached their duty by making material negligent misrepresentations and omissions described above when in the exercise of reasonable care should have known facts or circumstances indicating that these negligent misrepresentations and omissions were materially misleading at the time they were made.

68.    As a direct and proximate result of the negligent misrepresentations made by Defendants, MVI, its subsidiaries and related companies have suffered damages to their business and property, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) awarding prejudgment and post-judgment interest at the

maximum rate allowed by law; (3) awarding court costs; and (4) awarding any other relief this Court deems appropriate.

## XI.  COUNT IV
## PROFESSIONAL NEGLIGENCE (ALL DEFENDANTS)

69.     MVI re-alleges and re-states paragraphs 1 through 53 as if fully set forth herein.

70.     This is a cause of action against Defendants for professional negligence.

71.     As a result of their legal representation of MVI, its subsidiaries and related companies, Defendants knew or should have known that MVI and its entities were relying on their work product, representations, and statements in deciding how to operate and conduct their businesses.

72.     Defendants owed a duty to MVI, its subsidiaries and related companies to exercise reasonable care, skill, and diligence in order to ensure that all of the information obtained and supplied to MVI, in connection with their legal representation, was true and accurate.

73.     Defendants breached their duty of care by making the misrepresentations and omissions described above when, in the exercise of reasonable care; they should have known that these misrepresentations were misleading at the time they were made.

74.     As a direct and proximate result of the professional negligence of Defendants, MVI, its subsidiaries and related companies have suffered damages to their business and property, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) awarding prejudgment and post-judgment interest at the

maximum rate allowed by law; (3) awarding court costs; and (4) awarding any other relief this Court deems appropriate.

## XII.  COUNT V
### NEGLIGENT SUPERVISION (AGAINST RACHLIN)

75.    MVI re-alleges and re-states paragraphs 1 through 53 as if fully set forth herein.

76.    This is a cause of action against Rachlin for the negligent supervision of Holtz.

77.    Rachlin owed MVI, its subsidiaries and related companies a duty to use reasonable care in supervising the conduct and activities of Holtz and Marrero in connection with their representation of MVI, its subsidiaries and related companies.

78.    Rachlin breached its duty of reasonable care by failing to supervise Holtz and Marrero to ensure that his conduct and activities were not fraudulent or deceptive and that all of his work product and representations on behalf of MVI were true and accurate.

79.    As a direct and proximate result of this breach, MVI and its related entities have suffered damages to their business and property, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Rachlin: (1) awarding the amount of principal damages incurred by MVI due to Rachlin's actions and inactions; (2) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (3) awarding court costs; and (4) awarding any other relief this Court deems appropriate.

Respectfully submitted this 18th day of September, 2009.

/s/ R. Scott Shuker
R. Scott Shuker
Florida Bar. No. 0984469
Jennifer S. Eden
Florida Bar No. 0867594
Latham, Shuker, Eden & Beaudine, LLP
390 North Orange Avenue, Suite 600
Orlando, Florida 32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801
Attorneys for Debtor/Plaintiff

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In Re:

MIRABILIS VENTURES, INC.,

      Debtor.

_____/

MIRABILIS VENTURES, INC.,

      Plaintiff,

v.

MARCUM RACHLIN, a division of
MARCUM LLP fka RACHLIN, LLP fka
RACHLIN COHEN & HOLTZ, LLP,
a foreign limited liability partnership;
LAURIE S. HOLTZ, an individual,
and JOSE I. MARRERO, an individual,

      Defendants.

_____/

CASE NO.: 6:08-bk-04327-KSJ

CHAPTER 11

ADV. PRO. NO.: 6:08-ap-00223-KSJ

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the **FIRST AMENDED COMPLAINT**, and all exhibits, have been furnished via U.S. Mail and facsimile to: **Joseph A. DeMaria, Esq.,** Tew Cardenas LLP, 1441 Brickell Avenue, Suite 1500, Miami, FL 33131 and Mirabilis Ventures, Inc., c/o **R.W. Cuthill, Jr.,** 341 Maitland Blvd., Suite 120, Maitland, Florida 32751 on this 18th day of September 2009.

          /s/ R. Scott Shuker_____
          R. Scott Shuker, Esq.

Oct 28 04 03:58p

P. 1



**DEAN HELLER**
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4299
(775) 684 5708
Website: secretaryofstate.biz

*C 28003 -03*

FILED

OCT 2 8 2004

Dean Heller
Secretary of State

## Certificate to Accompany Restated Articles
### (PURSUANT TO NRS)

*Important: Read attached instructions before completing form.*

ABOVE SPACE IS FOR OFFICE USE ONLY

**This Form is to Accompany Restated Articles of Incorporation**
**(Pursuant to NRS 78.403, 82.371, 86.221, 88.355 or 88A.250)**
(This form is also to be used to accompany Restated Articles for Limited-Liability Companies, Certificates of
Limited Partnership, Limited-Liability Limited Partnerships and Business Trusts)

**1. Name of Nevada entity as last recorded in this office:**

STELLAR INDUSTRIES, INC.   File# C28003-2003

**2.** The articles are being ☐ Restated or ☒ Amended and Restated (check only one). Please entitle your attached articles "Restated" or "Amended and Restated," accordingly.

**3.** Indicate what changes have been made by checking the appropriate box.*

☐ No amendments; articles are restated only and are signed by an officer of the corporation who has been authorized to execute the certificate by resolution of the board of directors adopted on _____. The certificate correctly sets forth the text of the articles or certificate as amended to the date of the certificate.

☒ The entity name has been amended.

☐ The resident agent has been changed. (attach Certificate of Acceptance from new resident agent)

☐ The purpose of the entity has been amended.

☐ The authorized shares have been amended.

☒ The directors, managers or general partners have been amended.

☐ IRS tax language has been added.

☒ Articles have been added.

☐ Articles have been deleted.

☒ Other. The articles or certificate have been amended as follows: (provide article numbers, if available)

1. Name Change to MIRABILIS VENTURES, INC.

* This form is to accompany Restated Articles which contain newly altered or amended articles. The Restated Articles must contain all of the requirements as set forth in the statutes for amending or altering the articles or certificates

**IMPORTANT:** Failure to include any of the above information and submit the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees. See attached fee schedule.*   Nevada Secretary of State AM: HELTER Re. Incr. Revised on 10/2004

**EXHIBIT "A"**

P.3



**DEAN HELLER**
Secretary of State
204 North Carson Street, Suite 1
Carson City, Nevada 89701-4299
(775) 684 5708
Website: secretaryofstate.biz

C28003-03

FILED

OCT 2 8 2004

Dean Heller
Secretary of State

## Certificate of Amendment
### (PURSUANT TO NRS 78.380)

Important: Read attached instructions before completing form.

ABOVE SPACE IS FOR OFFICE USE ONLY

### Certificate of Amendment to Articles of Incorporation
#### For Nevada Profit Corporations
##### (Pursuant to NRS 78.380 - Before Issuance of Stock)

1. Name of corporation:

STELLAR INDUSTRIES, INC. File # C28003-2003

2. The articles have been amended as follows (provide article numbers, if available):

Name Change to MIRABILIS VENTURES, INC.
Attached new set of Articles of Incorporation

3. The undersigned declare that they constitute <u>at least two-thirds of</u> the <u>incorporators</u> ☒, or of the board <u>of directors</u> ☐   (check one box only)

4. Effective date of filing (optional): _____
*(must not be later than 90 days after the certificate is filed)*

5. The undersigned affirmatively declare that to the date of this certificate, no stock of the corporation has been issued.

6. Signatures*:

_Rob O'Sullivan_
Signature                                          Signature

* If more than two signatures, attach an 8 1/2x 11 plain sheet with the additional signatures.

IMPORTANT: Failure to include any of the above information and submit the proper fees may cause this filing to be rejected.

*This form must be accompanied by appropriate fees. See attached fee schedule.*

Nevada Secretary of State Amend 78.380 2003
Revised on 10/00/03

EXHIBIT "A"

# ARTICLES OF INCORPORATION

## Amended and Restated

### (Pursuant to NRS, Chapter 78)

## ARTICLE I—NAME

The name of the corporation is **MIRABILIS VENTURES, INC.**

## ARTICLE II—RESIDENT AGENT NAME AND STREET ADDRESS

The name of the resident agent for service of process is XTREME BUSINESS SOLUTIONS, located at 3838 Raymert Drive Suite 3, Las Vegas, NV 89121-3247. The mailing address for the resident agent is P.O. Box 50729, Henderson, NV 89016.

## ARTICLE III—PURPOSE

The corporation is organized for the purpose of engaging in any lawful activity, within or without the State of Nevada.

## ARTICLE IV—SHARES OF STOCK

*Number of Shares*

The total number of shares of authorized capital stock of the corporation shall consist of seventy-five thousand (75,000) shares with no par value.

*Classes and Series*

Per NRS 78.035, the Board of Directors is authorized to fix and determine in a resolution the classes, series and numbers of each class or series as provided in NRS 78.195 and 78.196, with such voting powers, designations, preferences and rights or qualifications, limitations or restrictions thereof as shall be stated in the pertinent resolution or resolutions.

*No Preemptive Rights*

Holders of the common stock of the corporation shall not have any preference, preemptive right or right of subscription to acquire any shares of the corporation authorized, issued or sold, or to be authorized, issued or sold and convertible into shares of the corporation, nor to any right of subscription thereto, other than to the extent, if any, that the Board of Directors may determine from time to time.

*Non-Assessability*

The common stock of the corporation, after the amount of the subscription price has been paid, in money, property or services, as the Board of Directors shall determine, shall not

**EXHIBIT "A"**

be subject to assessment to pay the debts of the corporation, nor for any other purpose, and no stock issued as fully paid shall ever be assessable or assessed, and the Articles of Incorporation shall not be amended in this particular.

### Debt Obligations Equivalent to Stock

The holder of a bond, debenture or other obligation of the corporation may have any of the rights of a stockholder in the corporation.

## ARTICLE V—DIRECTORS

### Governing Board

The members of the Governing Board of the corporation shall be styled as Directors.

### Initial Board of Directors

The initial Board of Directors shall consist of one member. The name and address of the initial member of the Board of Directors is Gailie Hartman of 3838 Raymert Drive, Suite # 3 Las Vegas, NV 89121. This individual shall serve as Director until the first annual meeting of the stockholders, until successor(s) shall have been elected and qualified, or until resigned pursuant to NRS 78.130.

### Change in Number of Directors

The number of directors may be increased or decreased by a duly adopted amendment to the Bylaws of the corporation or by a resolution representing all or a quorum of the Governing Board, pursuant to NRS 78:115.

## ARTICLE VI—DIRECTORS' AND OFFICERS' LIABILITY

A director or officer of the corporation shall not be personally liable to this corporation or its stockholders for damages for breach of fiduciary duty as a director or officer, but this Article shall not eliminate or limit the liability of a director or officer for acts or omissions which involve fraud or a knowing violation of the law.

Any repeal, modification or amendment of this Article shall be prospective only and shall not adversely affect any limitation on the personal liability of a director or officer of the corporation for acts or omissions prior to such repeal or modification.

## ARTICLE VII—INDEMNITY

Every person who was or is a party to, or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he or a person of whom he is the legal representative is or was a director or officer of the corporation, or is or was serving at the

**EXHIBIT "A"**

request of the corporation as a director or officer of another corporation, or as its representative in a partnership, joint venture, trust or other enterprise, shall be indemnified and held harmless to the fullest extent legally permissible under the laws of the State of Nevada against any and all expenses, liability or loss (including attorney's fees, judgments, fines and amounts paid or to be paid in settlement) reasonably incurred or suffered by him in connection therewith. Such right of indemnification shall be a contract right which may be enforced in any manner desired by such person. The expenses of officers and directors incurred in defending a civil or criminal action, suit or proceeding must be paid by the corporation as they are incurred and in advance of the final disposition of the action, suit or proceeding, upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he is not entitled to be indemnified by the corporation. Such right of indemnification shall not be exclusive of any other right which such directors, officers or representatives may have or hereafter acquire and, without limiting the generality of such statement, they shall be entitled to their respective rights of indemnification under any bylaw, agreement, vote of stockholders, provision of law or otherwise, as well as their rights under this Article.

Without limiting the application of the foregoing, the stockholders or Board of Directors may adopt by-laws from time to time with respect to indemnification to provide at all times the fullest indemnification permitted by the laws of the State of Nevada, and may cause the corporation to purchase and maintain insurance on behalf of any person who is or was an officer or director of the corporation, or is or was serving at the request of the corporation as director or officer of another corporation, or as its representative in a partnership, joint venture, trust or other enterprise against any liability asserted against such person and incurred in any such capacity or arising out of such status, whether or not the corporation would otherwise have the power to indemnify such person.

## ARTICLE VIII—AMENDMENTS

Except with respect to amending the non-assessability of shares per Article IV, this corporation reserves the right to amend, alter, change or repeal any provision contained in these Articles of Incorporation or its Bylaws in the manner now or hereafter prescribed by statute or by these Articles of Incorporation or by the corporation's Bylaws, and all rights conferred upon the stockholders are granted subject to this reservation.

## ARTICLE IX—POWERS OF DIRECTORS

In furtherance and not in limitation of the powers conferred by statute, the Board of Directors is expressly authorized:

1) Subject to the Bylaws, if any, adopted by the stockholders, to make, alter, or repeal the Bylaws of the corporation;
2) To authorize and cause to be executed mortgages and liens, with or without limit as to amount, upon the real and personal property of the corporation;

## EXHIBIT "A"

3) To authorize the guaranty by the corporation of securities, evidences of indebtedness and obligations of other persons, corporations and business entities;

4) To set apart out of any of the funds of the corporation available for distributions a reserve or reserves for any proper purpose and to abolish any such reserve;

5) By resolution, to designate one or more committees, each committee to consist of at least one director of the corporation, which, to the extent provided in the resolution or the Bylaws of the corporation, shall have and may exercise the powers of the Board of Directors in the management of the business and affairs of the corporation, and may authorize the seal of the corporation to be affixed to all papers which may require it. Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board of Directors; and

6) To authorize the corporation by its officers or agents to exercise all such powers to do all such acts and things as may be exercised or done by the corporation, except and to the extent that any such statute shall require action by the stockholders of the corporation with regard to the exercising of any power or the doing of any such act or thing.

In addition to the powers and authorities herein or by statute expressly conferred upon them, the Board of Directors may exercise all such powers and do all such acts and things as may be exercised or done by the corporation, except as otherwise provided herein and by law.

ARTICLE X—NAME, ADDRESS AND SIGNATURE OF INCORPORATOR

Name: Xtreme Business Solutions Inc.  Signature: _Rob O'Sullivan_
Address: P.O. Box 50729
Henderson, NV 89016                   for XTREME BUSINESS SOLUTIONS, INC

CERTIFICATE OF ACCEPTANCE OF APPOINTMENT OF RESIDENT AGENT

I, XTREME BUSINESS SOLUTIONS, INC., hereby accept appointment as resident agent for the above-named corporation, as of November 3, 2003

_Rob O'Sullivan_
for XTREME BUSINESS SOLUTIONS, INC.

EXHIBIT "A"

## WRITTEN ACTION OF THE DIRECTORS
## OF
## MIRABILIS VENURES, INC.

October 28, 2004

The undersigned, being and constituting all of the Directors of **MIRABILIS VENTURES, INC.**, a Nevada corporation (the "Corporation" or "MVI"), do hereby consent to the following actions to be taken without a meeting of the Board of Directors of this Corporation:

**BE IT RESOLVED THAT** this Corporation is authorized to issue 1,000 shares of common stock to Yaniv Amar in exchange for the provision of $100 of in-kind services, and other good and valuable consideration.

Yaniv Amar, Director

**EXHIBIT "A"**

## MEMORANDUM

TO: RICHARD BERMAN, ESQ.

FROM: FRANK AMODEO

SUBJECT: SUNSHINE COMPANIES

DATE: 1/4/2005

PRIVILEGED TO: LAURIE HOLTZ, MATTHEW DRUCKMAN, A. KENNETH LEVINE, SHARMILA KHANORKAR, MORRIS HOLLANDER, DAVID APPEL, HANS BEYER, ESQ., EDIE BROADHEAD, ESQ., CHARLES RAHN

### Sunshine Matter Timetable

I.   Acquisition of Sunshine Companies - twelve midnight, Friday, December 31, 2004.

II.   1.  Meeting of shareholders and directors of Sunshine Companies Monday, January 3, 2005 in Orlando, Florida.

- Elect new officers and directors
- Authorize employment of professionals
- Ratify Presidion/Wellington transactions

2.  Meet with Rahn to plan logistics of obtaining and preserving Sunshine books and records.

III.   1.  Meeting with Hans Beyer, Chris O'Connor and Shane Williams on January 6, 2005 at Miami Gardens office to prepare bankruptcy schedules – emergency petition prepared and primed for filing. Plus, first day motions and brief in support of "stay-expansion".

2.  Richard Berman to contact U.S. Attorney's office to schedule a meeting with appropriate persons in Miami and Detroit for myself and Edie.

3.  Jose Marrero to contact IRS: Criminal Investigation Division and inform them of change of ownership at Sunshine Cos. and change of control at Presidion and schedule meeting with myself and Edie.

4.  Ken Levine to contact Florida Department of Insurance and notify them of Sunshine change of ownership and Presidion change of control; schedule meeting if needed.

**EXHIBIT "B"**

5. Matt Druckman, Sharmila Khanorkar, and RCH forensic team to plan schedule of reviewing all Sunshine transactions and corporate governance documents to comply with bankruptcy disclosure issues and identify avoidable conveyances.

6. David Appel to review Sunshine Tax Returns for accuracy and compliance - make recommendations.

7. Morris Hollander to review SEC filings by Presidion to insure accuracy, especially of Sunshine transactions.

8. Morris Hollander and Matt Druckman to review financial statements of Sunshine for issues and amendments.

IV.  Laurie/Richard, please select someone to contact IRS civil enforcement level who can get us to a high enough ranked individual to have a serious discussion about receiving an expeditious final assessment and can talk intelligently about the advantages of a confidential offer-in-compromise; mutually agreed upon as opposed to an imposed resolution in bankruptcy court. This meeting should be after CID and US Attorney, but otherwise in late January or early February.


Frank Amodeo
[Dictated but not reviewed]


Craig:

- the final payroll period for Sunshine, I assume, is going to be through 12/31/04. Confirm these will be included on the current year's W2, but only so long as the checks are issued by Friday; otherwise they will be included on either Paradigm or PBS for next year.

**EXHIBIT "B"**

From:    Druckman, Matthew E. (x2110) [MDruckman@rachlin.com]
Sent:    Wednesday, December 29, 2004 9:54 AM
To:      Richard Berman
Cc:      Ken Levine; Holtz, Laurie S. (x1007); Hollander, Morrie I. (x1019); Khanorkar, Sharmila R. (x1142); Hans Christian Beyer; edlebroadhead; Appel, David S. (x1031); Charles Rahn; shane
Subject: RE: Sunshine Companies

Richard:

I will await instructions from you (or Shane, Charles Rahn, or Edie Broadhead) regarding when and where the books and records will be available for the forensic review. Please let me know as soon as possible after the meeting of January 3. If Charles needs any IT support, please advise as soon as possible.

I am out of the office, but will continue to check emails during the remainder of this week.

Matt Druckman

---

From: Charles Rahn [mailto:charles@averyprivateeye.com]
Sent: Tuesday, December 28, 2004 5:39 PM
To: shane; Richard Berman
Cc: Ken Levine; Holtz, Laurie S. (x1007); Druckman, Matthew E. (x2110); Hollander, Morrie I. (x1019); Khanorkar, Sharmila R. (x1142); Hans Christian Beyer; 'edlebroadhead'; Appel, David S. (x1031)
Subject: Re: Sunshine Companies

Got it.

What time will the meeting commence on Monday?

Thanks,

Charles

----- Original Message -----
From: shane
To: Richard Berman
Cc: Ken Levine ; Laurie S, Holtz ; Matthew E. Druckman ; Morris I, Hollander ; Sharmila Khanorkar ; Hans Christian Beyer ; 'edlebroadhead' ; Charles Rahn ; dappel@rachlin.com
Sent: Tuesday, December 28, 2004 5:27 PM
Subject: Sunshine Companies

Please find Sunshine matter timetable memo from Frank Amodeo attached.

Thanks,
Shane Williams
AQMI Strategy Corporation

No virus found in this incoming message.
Checked by AVG Anti-Virus.
Version: 7.0.298 / Virus Database: 265.6.5 - Release Date: 12/26/2004

**EXHIBIT "B"**

From:    Richard E. Berman [reb@bermankean.com]
Sent:    Wednesday, December 29, 2004 11:14 AM
To:      shane
Subject: FW: Sunshine Companies

Please advise Frank of the attached.  Thanks.

Richard


Richard E. Berman, Esq.
Berman, Kean & Riguera, P.A.
2101 W. Commercial Blvd, Ste. 2800
Fort Lauderdale, Florida 33309
Telephone: (954) 735-0000
Fax: (054) 735-3636
Email: REB@BermanKean.com

This e-mail message, including attachments, if any, is intended only for the person to whom, or entity to which, it is addressed and may contain
confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient,
please contact the sender by reply e-mail, destroy all copies of the original message, and do not disseminate it further.  If you are the intended
recipient, but do not wish to receive communications through this medium, please advise the sender immediately.


From: Druckman, Matthew E. (x2110) [mailto:MDruckman@rachlin.com]
Sent: Wednesday, December 29, 2004 9:54 AM
To: Richard E. Berman
Cc: Ken Levine; Holtz, Laurie S. (x1007); Hollander, Morrie I. (x1019); Khanorkar, Sharmila R. (x1142); Hans
Christian Beyer; edlebroadhead; Appel, David S. (x1031); Charles Rahn; shane
Subject: RE: Sunshine Companies

Richard:

I will await instructions from you (or Shane, Charles Rahn, or Edie Broadhead) regarding when and where the
books and records will be available for the forensic review.  Please let me know as soon as possible after the
meeting of January 3.  If Charles needs any IT support, please advise as soon as possible.

I am out of the office, but will continue to check emails during the remainder of this week.

Matt Druckman


From: Charles Rahn [mailto:charles@averyprivateeye.com]
Sent: Tuesday, December 28, 2004 5:39 PM
To: shane; Richard Berman
Cc: Ken Levine; Holtz, Laurie S. (x1007); Druckman, Matthew E. (x2110); Hollander, Morrie I. (x1019);
Khanorkar, Sharmila R. (x1142); Hans Christian Beyer; 'edlebroadhead'; Appel, David S. (x1031)
Subject: Re: Sunshine Companies

Got it.

What time will the meeting commence on Monday?


**EXHIBIT "B"**

Thanks,

Charles

—— Original Message ——
**From:** shane
**To:** Richard Berman
**Cc:** Ken Levine ; Laurie S. Holtz ; Matthew E. Druckman ; Morris I. Hollander ; Sharmila Khanorkar ; Hans Christian Beyer ; 'ediebroadhead' ; Charles Rahn ; dappel@rachlin.com
**Sent:** Tuesday, December 28, 2004 5:27 PM
**Subject:** Sunshine Companies

Please find Sunshine matter timetable memo from Frank Amodeo attached.

Thanks,
Shane Williams
AQMI Strategy Corporation

No virus found in this incoming message.
Checked by AVG Anti-Virus.
Version: 7.0.298 / Virus Database: 265.6.5 - Release Date: 12/26/2004

**EXHIBIT "B"**

**From:**    shane [shane@matrixnetwork.net]
**Sent:**    Wednesday, December 29, 2004 11:34 AM
**To:**    'Druckman, Matthew E. (x2110)'
**Cc:**    Laurie S. Holtz (lholtz@rachlin.com)
**Subject:** RE: Sunshine Companies

Hi Matt,

Frank said not to worry about it this week. We will let you know as soon as we finish with the meeting on Jan. 3rd.

Also, Frank would like you and Laurie to take a look at the e-mails you should be receiving from Dan Myers and Tessah Ivey.

Thanks,
Shane
(321) 947-9797

-----Original Message-----
**From:** Druckman, Matthew E. (x2110) [mailto:MDruckman@rachlin.com]
**Sent:** Wednesday, December 29, 2004 9:54 AM
**To:** Richard Berman
**Cc:** Ken Levine; Holtz, Laurie S. (x1007); Hollander, Morrie I. (x1019); Khanorkar, Sharmila R. (x1142); Hans Christian Beyer; ediebroadhead; Appel, David S. (x1031); Charles Rahn; shane
**Subject:** RE: Sunshine Companies

Richard:

I will await instructions from you (or Shane, Charles Rahn, or Edie Broadhead) regarding when and where the books and records will be available for the forensic review. Please let me know as soon as possible after the meeting of January 3. If Charles needs any IT support, please advise as soon as possible.

I am out of the office, but will continue to check emails during the remainder of this week.

Matt Druckman

**From:** Charles Rahn [mailto:charles@averyprivateeye.com]
**Sent:** Tuesday, December 28, 2004 5:39 PM
**To:** shane; Richard Berman
**Cc:** Ken Levine; Holtz, Laurie S. (x1007); Druckman, Matthew E. (x2110); Hollander, Morrie I. (x1019); Khanorkar, Sharmila R. (x1142); Hans Christian Beyer; 'edlebroadhead'; Appel, David S. (x1031)
**Subject:** Re: Sunshine Companies

Got it.

What time will the meeting commence on Monday?

Thanks,

Charles

---- Original Message ----

**EXHIBIT "B"**

From: shane
To: Richard Berman
Cc: Ken Levine ; Laurie S. Holtz ; Matthew E. Druckman ; Morris I. Hollander ; Sharmila Khanorkar ; Hans Christian Beyer ; 'ediebroadhead' ; Charles Rahn ; dappel@rachlin.com
Sent: Tuesday, December 28, 2004 5:27 PM
Subject: Sunshine Companies

Please find Sunshine matter timetable memo from Frank Amodeo attached.

Thanks,
Shane Williams
AQMI Strategy Corporation


No virus found in this incoming message.
Checked by AVG Anti-Virus.
Version: 7.0.298 / Virus Database: 265.6.5 - Release Date: 12/26/2004

**EXHIBIT "B"**

013006.4

January 30, 2006

Mr. Laurie Holtz, CPA
Mr. Matthew Druckman, CPA
Rachlin Cohen & Holtz, LLP
1 Southeast 3rd Avenue, 10th Floor
Miami, FL 33131

Re: Mirabilis Ventures, Inc. / Rachlin Cohen & Holtz, LLP

Dear Laurie and Matt:

I am writing this letter to assist you in developing a framework for providing ongoing services to me, Mirabilis Ventures, Inc. and any of our affiliated entities (collectively, "Mirabilis"). We are seeking a minimum time commitment from Rachlin Cohen & Holtz ("Rachlin") as more fully described below.

We understand that you will provide services that may be requested by us, or may be required in your judgment to assist us. We specifically want to request that Matt Druckman and Sharmila Khanorkar service our account with Matt designated the lead contact person on a daily basis. We anticipate that Laurie Holtz' consulting advice will be sought regularly as Mirabilis continues to grow and face decisions involving strategy and execution.

We will provide space for your firm's exclusive use within our office facilities in Orlando, FL to serve as a local base from which you can operate independent of Mirabilis' management. The office we will provide for your firm's use is available to you on a full-time basis and without charge.

During the course of our almost two-year business relationship, we have become acquainted with other talented people at Rachlin and expect there will be occasions when we will request their services in addition to what is outlined herein. Certain projects may present additional opportunities for Rachlin to provide services to Mirabilis; however acceptance of any such assignments is at Rachlin's discretion.

We recognize your need to plan and the difficulty of planning by specific assignment or project, therefore, we believe that you can satisfy our requirements by minimum monthly commitments with additional time above and beyond the minimum based on availability of your personnel.

**EXHIBIT "C"**

013006.4

We believe that this minimum should be, and you can count on, 300 hours per month mainly for Matt Druckman and Sharmila Khanorkar, including the services of Laurie Holtz. As to high-level tax work, we will consider that as we proceed, as additional time.

We anticipate that specific reports will be internally-generated with your assistance. I further represent to you that Mirabilis will not under any circumstances hold Rachlin Cohen & Holtz liable with regard to this arrangement.

I hope the framework set forth above offers you the flexibility needed to provide Mirabilis the services we have come to value.

Sincerely,


Frank Amodeo

**EXHIBIT "C"**

MINUTES OF THE MARCH 23, 2006 MEETING
OF BOARD OF DIRECTORS OF
MIRABILIS VENTURES, INC.

The meeting of the Board of Directors of Mirabilis Ventures, Inc. convened at 11:16 a.m. on March 23, 2006.

Present at the meeting were Edie Curry, Dr. Robert Pollack, James V. Sadrianna, Jason Carlson, Bruce Walko, and Frank Hailstones constituting all of the Directors of the Corporation. Chairman Walko headed the meeting and, at the request of Chairman Walko, Philip S. Kaprow acted as Secretary. Also present was Fernando Simo, Paul Glover, Alan Archer, Richard Berman, Frank Amodeo, Laurie Holtz, Shane Williams, Tom Broadhead, and Philip S. Kaprow.

The Chairman called the meeting to order and stated that a quorum of the Board of Directors was present for the conduct of business.

Upon motion duly made, seconded and unanimously carried, the Minutes from the February 15, 2006 Board of Director meeting were approved.

The board first reviewed the status of all committee work to be completed no later than April 1, 2006.

Thereafter, Frank Amodeo, guest speaker made a presentation to the Board of Directors on the subject of Corporate Governance, Acquisition, and Case Absolute Un-retractable Parameters.

Upon motion duly made, seconded and unanimously carried, the following resolution was carried:

RESOLVED, that on or before May 19, 2006, the Risk/Audit Committee present the board with proposed committee members and standard operating procedure for the selection and retention of legal counsel for each region of the Company;

BE IT FURTHER RESOLVED, that on or before May 19, 2006, the Compensation/Hiring Committee present the board with proposed changes to the Common Paymaster Employee Handbook and base pay and bonus compensation schedules;

BE IT FURTHER RESOLVED, that on or before May 19, 2006, the Executive Committee present the board with proposed standard operating procedure and guidelines for the use of corporate assets and vehicles;

BE IT FURTHER RESOLVED, that on or before May 19, 2006, the budgets for the remainder of fiscal year 2006 and a proposed rolling eighteen (18) month budget for Mirabilis Ventures, Inc. and each affiliate and subsidiary companies be presented to the board; and

BE IT FURTHER RESOLVED, that, on or before April 15, 2006 Mirabilis Ventures, Inc. shall either enter into a long-term contract with Berman, Kean, & Riguera, P.A. or in

EXHIBIT "D"

the alternative to identify alternate legal counsel for the provision of general counsel services to Mirabilis Ventures, Inc. and all affiliate and subsidiary companies, and that said contract shall be presented to the board on or before May 19, 2006 for ratification.

The Board then considered the membership of various committees.

Upon motion duly made, seconded and unanimously approved, it was

RESOLVED, that the below committees of Mirabilis Ventures, Inc. are comprised of the following individuals and no other:

Executive Committee:   Laurie Holtz, Frank Hailstones, James Sadrianna
Audit/Risk Committee:  Richard Berman, Frank Hailstones, Edie Curry-Broadhead
Compensation/Hiring Committee:  Larry Haber, Marty Flynn, Shane Cobb, Tom Broadhead
Investment Committee:  Robert Pollack, MD, Tom Broadhead, Jason Carlson, Frank Hailstones, Paul Glover, Fernando Simo, Horton Johnson, Dan Myers, Richard Berman

BE IT FURTHER RESOLVED, that pursuant to the direction of the Class A Common Shareholders, subject to any preferred shareholders rights pursuant to the Company bylaws or shareholders agreement, that the following individuals shall comprise the Board of Directors, with their tenure commencing upon adjournment of this meeting:

Laurie Holtz            Bruce Walko
Richard Berman          Tom Broadhead
Jason Carlson           Edie Curry-Broadhead
James V. Sadrianna      Robert W Pollack, MD
Frank Hailstones

BE IT FURTHER RESOLVED, that effective the adjournment of this meeting that Bruce Walko shall remain on the board, but shall yield his position as chairman to Laurie Holtz who shall thereafter be the new, full voting and participant chairman of the Board.

BE IT FURTHER RESOLVED, that effective the adjournment of this meeting, that Edie Curry-Broadhead shall become the Vice-Chair of Mirabilis Ventures, Inc.

The board next considered, and upon motion duly made, seconded, and unanimously approved the following:

RESOLVED, that the April 3, 2006 evening meeting by Frank Hailstones, is hereby authorized, ratified and approved;

BE IT FURTHER RESOLVED, that the April 7, 2006 Orlando Magic event is hereby authorized, ratified and approved;

**EXHIBIT "D"**

032306

**BE IT FURTHER RESOLVED**, that the development of a relationship with Continuum Enterprises as a preferred vendor provider is hereby authorized, ratified, and approved;

**BE IT FURTHER RESOLVED**, that the investment committee is authorized to commit $8,000,000 for acquisitions in April, 2006 and $8,000,000 for acquisitions in May, 2006, with the closings to take place on those acquisitions in subsequent months.

Thereafter the Board considered, and upon motion duly made, seconded, and unanimously approved it was:

**RESOLVED**, that the Consulting Agreement between AQMI Strategy Corporation and Mirabilis Ventures, Inc. for the consultation on discretionary bonuses is hereby ratified and approved.

Thereafter the Board considered, and upon motion duly made, seconded, and unanimously approved it was:

**RESOLVED**, that the following exception letters, tentatively approved by the Executive Committee are hereby ratified, affirmed, and approved:

| Date | Name |
|------|------|
| 1/25/06 | Fernando Simo |
| 1/27/06 | Jason Brownell |
| 1/31/06 | Michael Stanley |
| 2/13/06 | F.S. Winsett |
| 2/22/06 | Kellie Ledbetter |
| 2/22/06 | David Chaviers |
| 2/22/06 | Tom Hancock |
| 2/26/06 | Mark Lang |
| 2/25/06 | Lyle Gluck |
| 3/1/06 | Aaron Bates |
| 3/10/06 | Scott Fender |
| 3/15/06 | Steve Zadrick |
| 3/15/06 | Michael Hering |
| 3/18/06 | Sophie Kaye |
| 3/18/06 | Caprice LaCroix |
| 3/18/06 | Michael Miller |
| 3/18/06 | Daniel Mule |
| 3/18/06 | Sheri Pasqual |
| 3/18/06 | Carol Ruiz |
| 3/20/06 | Ronald Harrigan |
| 3/21/06 | James E. Abbott |
| 3/21/06 | Angelo J. Miceli |
| 3/22/06 | Jenny Freeman |
| 3/22/06 | Gregory Wolbers |
| 3/22/06 | Kelli M. Slaughter |

**EXHIBIT "D"**

| 3/22/06 | Nancy A. Adams |
|---------|----------------|

**BE IT FURTHER RESOLVED**, that future exception letters be approved by the Risk/Audit Committee and ratified by the Board of Directors.

Thereafter, the Board considered, and upon motion duly made, seconded, and unanimously approved it was:

**RESOLVED**, that the following are entities created by Mirabilis Ventures, Inc., the creation and maintenance of which are hereby ratified, affirmed, and approved:

| Corporate Name | Month/Year |
|----------------|------------|
| Centerpoint CS, LLC | 1/06 |
| Lake Suites Hotel, Inc. | 3/06 |
| Mirabilis Baseball, LLC | 1/06 |
| Common Paymaster III Corporation | 2/06 |
| Common Paymaster H Corporation | 3/06 |
| Investment Title Services, Inc. | 3/06 |
| Statim Satelite Corporation | 1/06 |

Thereafter the board considered, and upon motion duly made, seconded, and unanimously approved it was:

**RESOLVED**, that the following acquisitions and capital expenditures undertaken by Mirabilis Ventures, Inc. are hereby ratified, affirmed, and approved:

| Corporate Name | Month/Year | Capital Expenditure |
|----------------|------------|---------------------|
| Centerpoint CS, LLC | 3/06 | Non-monetary consideration |
| SecureSolutions, LLC | 3/06 | $940,000.00 |
| RF Scientific, Inc. | 3/06 | $350,000.00 |
| It's Your Move, Inc. | 3/06 | $20,000.00 |
| LTSS, LLC | 3/06 | $1,250,000.00 |
| Hancock Group, LLC | 2/06 | $2,500,000.00 |
| Auke Hempenius Enterprises, Inc. | 2/06 | $9,000.00 |
| 3801 Carolina Avenue | 3/06 | $171,512.78 |
| World Wrestling Legends, LLC | 2/06 | $200,000.00 |
| Nexia Strategy, LTD | 2/06 | $150,000.00 |
| Lake Ellen | 3/06 | $100,000.00 |
| Premier HR, Inc. | 2/06 | $600,000.00 |
| Hendricks | 2/06 | $2,347,196.39 |

Thereafter the Board considered, and upon motion duly made, seconded, and unanimously approved it was:

**EXHIBIT "D"**

**RESOLVED**, that the Agreement between AQMI Strategy Corporation and Mirabilis Ventures, Inc. dated November 1, 2004 for consultation services, be restated and ratified.

Thereafter, the Board considered, and upon motion duly made, seconded, and unanimously approved it was:

**RESOLVED**, that the actions taken by each director of Mirabilis Ventures, Inc. between February 15, 2006 and March 23, 2006 are hereby ratified and approved.

Thereafter there was a presentation by the Acquisition Division regarding the status of all projects being currently considered for acquisition by the Company.

Thereafter there was a presentation by Laurie Holtz on the subject of Business Alignment and Control.

The next meeting of the Board of Directors was then scheduled for May 19, 2006 at 12:00 PM at a location to be determined not less than ten (10) days before the meeting.

There being no further business before the meeting, the meeting was adjourned at 1:13 p.m.

Respectfully submitted,

Philip S. Keprow, Acting Secretary

Approved:

Bruce Walko, Chairman

**EXHIBIT "D"**

032306

WAIVER OF NOTICE OF THE 3-23-06 MEETING

OF THE BOARD OF DIRECTORS

OF

MIRABILIS VENTURES, INC.

The undersigned, being all of the Directors of Mirabilis Ventures, Inc., a corporation organized under the laws of the State of Nevada, do hereby waive all of the statutory requirements as to notice of the time, place and purpose of the special meeting of the Board of Directors of said Corporation, and the publication thereof, and consent that the meeting shall be held at the Florida offices of the Corporation on March 23, 2006 at Orlando, Florida at 11:00 a.m.

Bruce Walko, Chairman

Frank Hailstones, Director

Edie Curry, Director

Jason Carlson, Director

James V. Sadrianna, ~~Chairman~~ Director

Robert Pollack, MD, Director

**EXHIBIT "D"**

041806



**EXHIBIT "E"**

012506.1

# DESERT VALLEY AVIATION
# FLIGHT LOG

0106

| | NAME | TOTAL TIME | | |
|---|---|---|---|---|
| | | FAA | NIGHT | INST |
| CAPTAIN | J. BROWNELL | : | : | : |
| FIRST OFFICER | R. ROMERO | : | : | : |
| INSTRUCTOR | | : | : | : |
| CHECK AIRMAN | | : | : | : |

N 4488W  TYPE: _____
DATE: 1/25/06
HOBBS IN: _____  INSPECTION DUE: _____
HOBBS OUT: _____  OIL CHANGE DUE: _____
TODAY: _____

| | TIME | | | | | CYCLES | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | AIRCRAFT TOTAL | LEFT ENGINE S.M.OH | RIGHT ENGINE S.M.OH | LANDING GEAR | FLAPS | L-ENG | R-ENG | L-TR | R-TR |
| FORWARD | 4364 : 7 | 4327 : 1 | 4329 : 1 | 4202 | | 3839 | 3833 | | |
| TODAY | 4357 : 358 | 2 : 3 | 2 : 3 | 4 | | 4 | 4 | | |
| TOTAL | 4357 : 0 | 4329 : 4 | 4331 : 4 | 4206 | | 3843 | 3837 | | |
| FROM | ORL | FXE | ORL | FXE | FLIGHT NUMBER: 1 | | | | |
| TO | FXE | ORL | FXE | ORL | PASSENGERS | | | | |
| RAMP ARRIVAL | 16 00 | 17 54 | 02 42 | 04 06 | (1) EMPTY | (6) | | | |
| RAMP DEPARTURE | 15 12 | 17 06 | 01 54 | 03 24 | (2) | (7) | | | |
| TRIP TIME | 0 : 8 | 0 : 8 | 0 : 8 | 0 : 7 | (3) | (8) | | | |
| NIGHT | : | : | 0 : 8 | 0 : 7 | (4) | (9) | | | |
| INSTRUMENT | : | 1 | : | : | (5) | (10) | | | |
| LANDING TIME | 15 54 | 17 48 | 02 36 | 04 00 | REMARKS: | | | | |
| TAKEOFF TIME | 15 18 | 17 12 | 02 00 | 03 30 | | | | | |
| AIRCRAFT ENGINE LOG TIME | 0 : 6 | 0 : 6 | 0 : 6 | 0 : 5 | FLIGHT NUMBER: 2 | | | | |
| TYPE INSTRUMENT APPROACH | | | | | PASSENGERS | | | | |
| FUEL PURCHASED - GALLONS | | | | | (1) MATT DRUCKMAN | (6) | | | |
| FUEL PRICE PER GALLON | | | | | (2) LAURIE HOLTZ | (7) | | | |
| TOTAL FUEL CHARGES | | | | | (3) | (8) | | | |
| CREDIT CARD USED | | | | | (4) | (9) | | | |
| TIME DATA RECORDED | | | | | (5) | (10) | | | |
| ALTITUDE FLIGHT LEVEL | | | | | REMARKS: Rachlin | | | | |
| AIRSPEED - KNOTS/MACH | | | | | | | | | |
| OUTSIDE AIR TEMP C | | | | | FLIGHT NUMBER: 3 | | | | |
| OIL ADDED / OIL LEVEL | | | | | PASSENGERS | | | | |
| EGT / TIT / TGT / ITT | | | | | (1) Matt Druckman | (6) | | | |
| TORQUE / EPR | | | | | (2) Laurie Holtz | (7) | | | |
| RPM / N2 | | | | | (3) Richard Berman | (8) | | | |
| MAINFOLD PRESSURE / N1 | | | | | (4) | (9) | | | |
| FUEL FLOW - GPM / PPM | | | | | (5) | (10) | | | |
| OIL TEMPERATURE | | | | | REMARKS: Rachlin, | | | | |
| OIL PRESSURE | | | | | | | | | |
| CYLINDER MEAD TEMP | | | | | FLIGHT NUMBER: 4 | | | | |
| SUCTION - PNEUMATIC | | | | | PASSENGERS | | | | |
| DEICE FLUID - OXYGEN | | | | | (1) Empty | (6) | | | |
| AMPS & VOLTS, D.C. | | | | | (2) | (7) | | | |
| INVERTER / REGULATOR 1 & 2 | | | | | (3) | (8) | | | |
| PROPELLER HEAT | | | | | (4) | (9) | | | |
| DIFFERENTIAL PRESSURE | | | | | (5) | (10) | | | |
| MILEAGE - STATUTE MILES | | | | | REMARKS: | | | | |
| VOR CHECK | #1 | #2 | LOCATION | DIFFERENCE | | | | | |

| COMMENTS: |
|---|
| Mirabilis |
| ORL FXE RT 1.2 |
| ORL FXE RT 1.1 |

**AIRPORT IDENTIFIERS**

| ORL | Orlando Executive |
|---|---|
| FXE | Ft. Lauderdale Exec |

**EXHIBIT "F"**

SIGNATURE _____

020806.2

# DESERT VALLEY AVIATION
## FLIGHT LOG

0109

N 4488W TYPE: _____

DATE: 2/8/06

HOBBS IN: _____ INSPECTION DUE: _____

HOBBS OUT: _____ OIL CHANGE DUE: _____

TODAY: _____

| NAME | FAA | TOTAL TIME NIGHT | INST |
|---|---|---|---|
| CAPTAIN J. Brownell | : | : | : |
| FIRST OFFICER R. Romero | : | : | : |
| INSTRUCTOR | : | : | : |
| CHECK AIRMAN | : | : | : |

| | TIME | | | | | CYCLES | | | |
|---|---|---|---|---|---|---|---|---|---|
| | AIRCRAFT TOTAL | LEFT ENGINE S.M.OH | RIGHT ENGINE S.M.OH | LANDING GEAR | FLAPS | L-ENG | R-ENG | L-TR | R-TR |
| FORWARD | 4362 : 6 | 4335 : 0 | 4337 : 0 | 4212 | | 3849 | 3843 | | |
| TODAY | 1 : 2 | 1 : 2 | 1 : 2 | 2 | | 2 | 2 | | |
| TOTAL | 4363 : 8 | 4336 : 2 | 4338 : 2 | 4214 | | 3851 | 3845 | | |

| | | | | | |
|---|---|---|---|---|---|
| FROM | ORL | FXE | | FLIGHT NUMBER: 1 | |
| TO | FXE | ORL | | PASSENGERS | |
| RAMP ARRIVAL | | | | (1) R. Berman | (6) |
| RAMP DEPARTURE | | | | (2) L. Holtz | (7) |
| TRIP TIME | : | : | : | (3) M. Druckman | (8) |
| NIGHT | 0:9 | 0:7 | : | (4) | (9) |
| INSTRUMENT | : | : | : | (5) | (10) |
| LANDING TIME | 2336 | 0042 | | REMARKS: | |
| TAKEOFF TIME | 2254 | 0012 | | | |
| AIRCRAFT ENGINE LOG TIME | 0:7 | 0:5 | : | FLIGHT NUMBER: 2 | |
| TYPE INSTRUMENT APPROACH | | | | PASSENGERS | |
| FUEL PURCHASED - GALLONS | | | | (1) Empty | (6) |
| FUEL PRICE PER GALLON | | | | (2) | (7) |
| TOTAL FUEL CHARGES | | | | (3) | (8) |
| CREDIT CARD USED | | | | (4) | (9) |
| TIME DATA RECORDED | | | | (5) | (10) |
| ALTITUDE FLIGHT LEVEL | | | | REMARKS: | |
| AIRSPEED - KNOTS/MACH | | | | | |
| OUTSIDE AIR TEMP C | | | | FLIGHT NUMBER: | |
| OIL ADDED / OIL LEVEL | / | / | / | PASSENGERS | |
| EGT / TIT / TGT / ITT | | | | (1) | (6) |
| TORQUE / EPR | | | | (2) | (7) |
| RPM / N2 | | | | (3) | (8) |
| MAINFOLD PRESSURE / N1 | | | | (4) | (9) |
| FUEL FLOW - GPM / PPM | | | | (5) | (10) |
| OIL TEMPERATURE | | | | REMARKS: | |
| OIL PRESSURE | | | | | |
| CYLINDER MEAD TEMP | | | | FLIGHT NUMBER: | |
| SUCTION - PNEUMATIC | | | | PASSENGERS | |
| DEICE FLUID - OXYGEN | | | | (1) | (6) |
| AMPS & VOLTS, D.C. | / | / | / | (2) | (7) |
| INVERTER / REGULATOR 1 & 2 | | | | (3) | (8) |
| PROPELLER HEAT | | | | (4) | (9) |
| DIFFERENTIAL PRESSURE | | | | (5) | (10) |
| MILEAGE - STATUTE MILES | | | | REMARKS: | |
| VOR CHECK | #1 | #2 | LOCATION | DIFFERENCE | |

| COMMENTS: |
|---|
| Mirablis |
| ORL FXE RT 1.2 |

AIRPORT IDENTIFIERS

_____ _____

_____ _____

_____ _____

_____ _____

**EXHIBIT "F"**

SIGNATURE _____

030106

# DESERT VALLEY AVIATION
# FLIGHT LOG

0112

| NAME | | TOTAL TIME | | |
|---|---|---|---|---|
| | FAA | NIGHT | INST | |
| CAPTAIN | Brownell | : | : | : |
| FIRST OFFICER | Gluck | : | : | : |
| INSTRUCTOR | | : | : | : |
| CHECK AIRMAN | | : | : | : |

N: H488W   TYPE: _____
DATE: 3/1/06
HOBBS IN: _____   INSPECTION DUE: _____
HOBBS OUT: _____   OIL CHANGE DUE: _____
TODAY: _____

| | TIME | | | | | CYCLES | | | |
|---|---|---|---|---|---|---|---|---|---|
| | AIRCRAFT TOTAL | LEFT ENGINE S.M.OH | RIGHT ENGINE S.M.OH | LANDING GEAR | FLAPS | L-ENG | R-ENG | L-TR | R-TR |
| FORWARD | 4367 : 4 | 4339 : 8 | 4341 : 8 | 4218 | | 3855 | 3849 | | |
| TODAY | 2 : 5 | 2 : 5 | 2 : 5 | 4 | | 4 | 4 | | |
| TOTAL | 4369 : 9 | 4342 : 3 | 4344 : 3 | 4222 | | 3859 | 3853 | | |

| FROM | ORL | FXE | ORL | FXE | FLIGHT NUMBER: | |
|---|---|---|---|---|---|---|
| TO | FXE | ORL | FXE | ORL | | PASSENGERS |
| RAMP ARRIVAL | | | | | (1) | (6) |
| RAMP DEPARTURE | | | | | (2) | (7) |
| TRIP TIME | : | : | : | : | (3) | (8) |
| NIGHT | : | : | : | : | (4) | (9) |
| INSTRUMENT | : | : | : | : | (5) | (10) |
| LANDING TIME | 1212 | 1412 | 0042 | 0206 | REMARKS: | |
| TAKEOFF TIME | 1136 | 1336 | 0000 | 0130 | | |
| AIRCRAFT ENGINE LOG TIME | : 6 | : 6 | : 7 | : 6 | FLIGHT NUMBER: | |
| TYPE INSTRUMENT APPROACH | | | | | | PASSENGERS |
| FUEL PURCHASED - GALLONS | | | | | (1) Richard Berman | (6) |
| FUEL PRICE PER GALLON | | | | | (2) Laurie Holtz | (7) |
| TOTAL FUEL CHARGES | | | | | (3) | (8) |
| CREDIT CARD USED | | | | | (4) | (9) |
| TIME DATA RECORDED | | | | | (5) | (10) |
| ALTITUDE FLIGHT LEVEL | | | | | REMARKS: | |
| AIRSPEED - KNOTS/MACH | | | | | | |
| OUTSIDE AIR TEMP C | | | | | FLIGHT NUMBER: | |
| OIL ADDED / OIL LEVEL | / | / | / | / | | PASSENGERS |
| EGT / TIT / TGT / ITT | | | | | (1) Richard Berman | (6) |
| TORQUE / EPR | | | | | (2) | (7) |
| RPM / N2 | | | | | (3) | (8) |
| MAINFOLD PRESSURE / N1 | | | | | (4) | (9) |
| FUEL FLOW - GPM / PPM | | | | | (5) | (10) |
| OIL TEMPERATURE | | | | | REMARKS: | |
| OIL PRESSURE | | | | | | |
| CYLINDER MEAD TEMP | | | | | FLIGHT NUMBER: | |
| SUCTION - PNEUMATIC | | | | | | PASSENGERS |
| DEICE FLUID - OXYGEN | | | | | (1) | (6) |
| AMPS & VOLTS, D.C. | / | / | / | / | (2) | (7) |
| INVERTER / REGULATOR 1 & 2 | | | | | (3) | (8) |
| PROPELLER HEAT | | | | | (4) | (9) |
| DIFFERENTIAL PRESSURE | | | | | (5) | (10) |
| MILEAGE - STATUTE MILES | | | | | REMARKS: | |
| VOR CHECK | #1 | #2 | LOCATION | DIFFERENCE | | |

**COMMENTS:**
Mirabilis

ORL - FXE   RT  1.2

~~FXE~~ ~~to~~

ORL - FXE   RT  1.3

**AIRPORT IDENTIFIERS**
_____   _____
_____   _____
_____   _____
_____   _____
_____   _____

**EXHIBIT "F"**

SIGNATURE _____

042206.1

From:           Frank Hailstones (M)
Sent:           Saturday, April 22, 2006 9:58 AM
To:             mholtz@aol.com
Subject:        Catch Up

Laurie

Got involved in series of meetings Friday through late then had to head off to Conference we are speaking at this weekend

Started pulling together the format for Internal audit Projects - sent you the first outline - IT Review which I copied to Edie and Rama

I am arranging a call Monday with Edie, Sharmilla and Steve to discuss execution strategy on this Project and others

I would like to use the Form as the standard format for specifying Internal Audit Project objectives so let me have your thoughts please

Have requested Glover to identify accounting system and responsible bookkeeper by company per our discussion.

Agreed format with Simo for managing Projects through a Project Office he will set up reporting to him

Briefed Bob Curry and gave him objectives for the 6-Week Project to generate PEO and Consulting business which we will kick-off Monday

Will edit the Corporate Governance documents and send them through early next week

Spoke with Sadrianna re extending the data on his company shheets to include identification of domain

Arranging a follow up meeting with Simo/Glover and a regular Monday meeting to keep tabs on progress

Regards

Frank


**EXHIBIT "G"**

3:33 PM

09/18/09

Accrual Basis

## Mirabilis Ventures, Inc.
## Find Report
### All Transactions

| Type | Date | Num | Name | Memo | Account | Clr | Split | Debit | Credit | Balance |
|------|------|-----|------|------|---------|-----|-------|-------|--------|---------|
| Bill Pmt -Check | 11/15/2006 | 11022 | Rachlin, Cohen & Holt... | | 1095 · Mirabilis - ... | X | 2000 · Pre-Petitio... | | 34,805.50 | -34,805.50 |
| Check | 3/1/2006 | 271 | Rachlin, Cohen & Holt... | | 1090 · Suntrust (... | X | 7100 · Legal & Ac... | | 46,690.50 | -81,496.00 |
| Bill Pmt -Check | 2/17/2006 | 263 | Rachlin, Cohen & Holt... | | 1090 · Suntrust (... | X | 2000 · Pre-Petitio... | | 52,810.00 | -134,306.00 |
| Check | 12/28/2005 | 12-28d | Rachlin, Cohen & Holt... | | 1090 · Suntrust (... | X | 7100 · Legal & Ac... | | 39,882.32 | -174,188.32 |
| Check | 11/23/2005 | 11-23 | Rachlin, Cohen & Holt... | | 1090 · Suntrust (... | X | 7100 · Legal & Ac... | | 100,000.00 | -274,188.32 |
| Check | 9/13/2005 | 9-13a | Rachlin, Cohen & Holt... | | 1090 · Suntrust (... | X | 7100 · Legal & Ac... | | 75,000.00 | -349,188.32 |
| Check | 12/1/2004 | 2071 | Rachlin, Cohen & Holt... | | 1050 · Berman Tr... | * | 7100 · Legal & Ac... | | 25,000.00 | -374,188.32 |
| **Total** | | | | | | | | **0.00** | **374,188.32** | **-374,188.32** |

**EXHIBIT "H"**