UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

MIRABILIS VENTURES, INC.,                    Case No.: 6-08-bk-04327-KSJ

Debtor                                       Chapter 11
_____/

MIRABILIS VENTURES, INC.,

        Plaintiff,                        Adv. Pro. No.: 6:08-ap-00223-KSJ

v.

RACHLIN COHEN & HOLTZ, LLP, a
Florida limited liability partnership nka
RACHLIN, LLP; LAURIE S. HOLTZ, an
individual; and JOSE I. MARRERO, an
individual,

        Defendants.
_____/

## DEFENDANTS MARCUMRACHLIN, LAURIE S. HOLTZ, AND JOSE I. MARRERO'S MOTION TO DISMISS PLAINTIFF MIRABILIS VENTURE, INC.'S FIRST AMENDED COMPLAINT

Pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants

MarcumRachlin, a division of Marcum LLP, f/k/a Rachlin Cohen & Holtz, LLP, Laurie S. Holtz

and Jose I. Marrero ("Defendants") move the Court to dismiss Plaintiff Mirabilis Ventures, Inc.'s

("Mirabilis" or "Plaintiff") First Amended Complaint ("Amended Complaint") (D.E. 24) for

failure to state a claim upon which relief may be granted.

## INTRODUCTION

Mirabilis Ventures, Inc., the debtor in this bankruptcy proceeding, has been indicted on seventeen counts of federal tax law violations, including conspiracy and wire fraud.[1] Mirabilis's principal, Frank Amodeo, has likewise been indicted, pled guilty, and been sentenced to twenty-two years in prison for diverting more than $150 million in federal payroll taxes.[2]  During his plea colloquy, Amodeo (a disbarred attorney) admitted under oath that he knew such actions were illegal.[3]

After filing for bankruptcy, Mirabilis filed mirror adversary proceedings in this Court against various professionals who had provided services to the company.[4]  Former law firms, lawyers, accounting firms, and accountants all were targeted by Mirabilis for their alleged failure to apprise Mirabilis of the illegality in failing to collect and remit payroll taxes.  In this case, Mirabilis sued two accountants and their firm, alleging five causes of action: negligence, breach of fiduciary duty, negligent misrepresentation, professional negligence, and negligent supervision.

The Plaintiff's Complaint appears to center on Mirabilis's supposed lack of knowledge regarding collected payroll tax funds and that such funds cannot be used to fund the operations of

---

[1]    *U.S. v. AEM, Inc., d/b/a Mirabilis HR, AQMI Strategy Corporation, Hoth Holdings, LLC, Mirabilis Ventures, Inc., Presidion Solutions, Inc., Professional Benefit Solutions, d/b/a Presidion Solutions VII, Inc.*, Case No. 6:08-cr-00231-JA-KRS (D.E. 30).

[2]    *U.S. v. Amodeo*, Case No. 6:08-cr-00176-JA-GJK-1 (D.E. 1) (charging Amodeo with five counts including conspiracy, failure to collect and remit payroll taxes, and obstruction of an agency proceeding).

[3]    *U.S. v. Amodeo*, Case No. 6:08-cr-00176-JA-GJK-1 (D.E. 41).

[4]    This includes the complaint at issue in this adversary proceeding as well as *Mirabilis Ventures, Inc. v. Richard E. Berman et al.* (Adv. Pro. No. 6:08-ap-00222-KSJ) (D.E. 1 and 16), *Mirabilis v. Buchanan, Ingersoll, & Rooney, P.L. et al.* (Adv. Pro. No. 6:08-ap-00227-KSJ) (D.E. 1 and 27) and *Mirabilis v. James Moore & Co., P.L. et al.* (Adv. Pro. No. 6:08-ap-00228 – KSJ) (D.E. 1).

2

the Plaintiff and related entities, to pay workers' compensation insurance premiums, and to reorganize advisors and secured creditors. Am. Compl. ¶ 27. While the Plaintiff alleges a variety of general facts related to the Sunshine Companies Plan, the PBS Plan and the nonpayment of payroll taxes, the Amended Complaint never once alleges what the Defendants' duty was to the Plaintiff. The only allegations are the conclusory legal allegations stating that "[a]n accountant-client relationship existed between Defendants and Mirabilis," and therefore, Defendants "knew or should have known that Mirabilis relied on their tax advice when determining whether the PBS Plan should be approved." Am. Compl. ¶¶ 39 and 40. Therefore, the Amended Complaint fails to state a claim under Fed.R.Civ.P. 12(b)(6), especially in light of the recent heightened pleading standard pronounced by the United States Supreme Court. Additionally, because the allegations cannot be adequately determined, the Amended Complaint is a shotgun pleading pursuant to Rule 8(a), which serves as additional, independent grounds to dismiss the Amended Complaint.

## MEMORANDUM OF LAW

### I.    Motion to Dismiss Standard

Two recent Supreme Court decisions have elevated the pleading standard necessary to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955 (2007); *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009). Through these decisions, the Supreme Court has made it clear that the "no-set-of-facts" test under *Conley v. Gibson,* 335 U.S. 41 (1957), is no longer good law. *Twombly,* 127 S. Ct. at 1969 (stating "*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough … after puzzling the profession for 50 years, this famous observation has earned its retirement"); *Iqbal,* 129 S.Ct. at 1944 (stating that "*Twombly* retired the *Conley* no-set-of-facts test"). This heightened standard has also been acknowledged

3

and applied by the Eleventh Circuit. *Sinaltrainal v. Coca-Cola Co.*, No. 06-15851, 2009 WL

2431463, *3 (11th Cir. Aug. 11, 2009) (citing *Twombly*, 127 S.Ct. 1955, and *Iqbal*, 129 S.Ct.

1937, and noting that *Twombly* retired the no-set-of-facts test).[5]

A complaint must now "raise a right to relief above the speculative level," which

"requires more than labels and conclusions . . . ." *Twombly*, 127 S.Ct. at 1965.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 129 S.Ct. at 1949 (internal citations omitted).[6]

Thus, while it is true that <u>well pled</u> allegations of fact are to be taken as true for purposes

of a motion to dismiss, conclusory allegations devoid of fact are not. *See McWhorter v. Miller,*

*Einhouse, Rymer & Boyd, Inc.,* No. 6:08-cv-1978-Orl-31KRS, 2009 WL 92846, *2 (M.D. Fla.

---

[5] In the Memorandum Opinion Denying Defendants' Motion to Dismiss in the related adversary proceeding against Buchanon, Ingersoll & Rooney, P.L., et al. (Adv. Pro. No. 6:08-ap-227), this Court relied on *Financial Security Assur., Inc. v. Stephens, Inc.*, 450 F.3d 1257, 1262 (citing to *Conley v. Gibson*, 335 U.S. 41 (1957)), and applied the *Conley* "no-set-of-facts" test. However, a petition for rehearing was granted in that case and the Eleventh Circuit vacated the opinion relied on by this Court. *See Financial Security Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1280 (11th Circuit 2007) (citing to *Twombly*, 550 U.S. 544) (stating that "the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief'" and removing all references to *Conley* and the no-set-of-facts test).

[6] The Supreme Court made it clear that this elevated standard applies in <u>all</u> civil actions. *Iqbal*, 129 S.Ct. 1953 (Though *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8. That Rule, in turn, governs the pleading standard 'in all civil actions and proceedings in the United States district courts.' Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'") (internal citations omitted).

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

Jan. 14, 2009) ("In ruling on a motion to dismiss, 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.'") (quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).    Accordingly, as explained by the Eleventh Circuit, "'unwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." *Coca-Cola Co.*, 2009 WL 2431463 at *3 (noting that courts are not required to draw plaintiff's inferences for them).  Under this legal rubric, Plaintiff has failed to meet its pleading burden, rendering the Complaint subject to dismissal.

**II.      The Plaintiff Fails to State a Cause of Action for All Claims Because the Plaintiff Fails to Allege the Most Basic Element of All of the Claims – the Duty owed by the Defendants to the Plaintiff**

The Amended Complaint contains five separate counts (negligence, breach of fiduciary duty, negligent misrepresentation, professional negligence, and negligent supervision), which all sound in professional malpractice.  All five counts are based on the same set of facts and allegations.[7]  Therefore, whether analyzing the negligence claim, the breach of fiduciary duty claim, the negligent misrepresentation claim, the professional negligence claim or the negligent supervision claim for the purpose of considering a motion to dismiss, the basic element of duty owed by the Defendants to the Plaintiff must be pled.  However, no where in the Amended Complaint does the Plaintiff state what the duty was owed by the Defendants to the Plaintiff.

The only place in the Amended Complaint that provides facts related to the Defendants involvement with the Plaintiff is in Section VI, entitled "Retention and Involvement of Laurie

---

[7] The five counts in the Amended Complaint are duplicative of one another.  Assuming such tactics are permissible at the pleading stage as alternate theories of recovery under Rule 8, if this case proceeds, the Plaintiff will be required to choose which claim it intends to pursue.  Mirabilis will not be permitted to charge repetitive claims for the same theory of liability.

Holtz by Mirabilis Venture, Inc. and its Subsidiaries and the Approval of the PBS Plan." Am.

Compl., p. 6. Section VI states the following:

31.    In 2004, Holtz was originally retained by AQMI to give tax advice regarding the Sunshine Companies Plan and to assist with its tax and accounting matters.

32.    Upon information and belief, Holtz and Marrero were employed by Rachlin for all times relevant for purposes of this Amended Complaint.

33.    On December 21, 2004, drawing upon his knowledge of the common issues of fact and law from the Sunshine Companies Plan among other represented qualifications, Defendants began consulting or otherwise advising Mirabilis and its subsidiaries.

34.    During this time, Holtz and Marrero began providing tax advice to Mirabilis and its subsidiaries with Holtz and Marrero were employed by Rachlin. A true and correct copy of the January 2, 2005 memorandum detailing some of Holtz's preliminary tasks and duties under the PBS Plan and Sunshine Plan is attached hereto as Exhibit "B".

35.    In January 2006, Holtz became so involved with the operations of Mirabilis, that Mirabilis suggested, and Holtz and Rachlin agreed, to use Mirabilis' office space in its Orlando office as its hub for continued representation of Mirabilis. A true and correct copy of the letter confirming Rachlin's continued involvement with Mirabilis is attached hereto as Exhibit "C".

36.    Shortly thereafter, Holtz was appointed to the Executive Committee of Mirabilis and later became the Chairman of Mirabilis' Board of Directors. A true and correct copy of the March 23, 2006 minutes of Mirabilis' Board of Director's meeting is attached hereto as Exhibit "D".

37.    Holtz even attended meetings with the IRS during his employment at Rachlin and as a board member of Mirabilis regarding the legality of the PBS Plan. A true and correct copy of the flight logs evidencing that in January and February 2006, Holtz took regular flights on the Mirabilis jet to discuss the implications and legality of the PBS Plan with the IRS is attached hereto as composite Exhibit "F".

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

38.      After these meeting, specifically on April 18, 2006, Holtz
began regular discussions regarding the tax plan with officers and
board members of Mirabilis. A true and correct copy of the
correspondence from Frank Hailstones to Holtz and is attached
hereto as Exhibit "G".

39.      An accountant-client relationship existed between
Defendants and Mirabilis.

40.      Holtz and Marrero knew or should have known that
Mirabilis relied on their tax advice when determining whether the
PBS Plan should be approved.

41.      On July 28, 2005, after receiving advice from Holtz,
Marrero and other professionals, Mirabilis and AEM began
managing the PEO book of business, its financial affairs and the
PEO operations.

42.      AEM and Mirabilis took over the PEO book of business
with the belief that their actions were legal and proper based on the
representations of Holtz, Marrero and other professionals. Upon
information and belief, and all relevant times, independent
members of Mirabilis' board of directors would have taken
appropriate remedial actions if the Defendants had disclosed that
Mirabilis would be responsible for the subject payroll taxes and
that the PBS Plan would subject Mirabilis to possible criminal and
civil penalties.

43.      From 2005 through 2007, Rachlin and Holtz were paid
thousands of dollars (the "Funds") for tax advice given to
Mirabilis. A true and correct copy of Mirabilis' general ledger
evidencing payments made from Mirabilis to Rachlin for services
rendered is attached hereto as Exhibit "H."

No where in the fifteen-page Amended Complaint does the Plaintiff state what Rachlin, Holtz or

Marrero were hired to do.[8]  Thus, what their duty was to the Plaintiff cannot be adequately

determined from the Amended Complaint.

---

[8] While each individual count also references the Defendants, they only contain formulaic
resuscitations of the elements of each claim, which falls far short of the required pleading
standard under *Twombly* and *Iqbal* as described above. Therefore, the only relevant
consideration to determine whether sufficient facts are alleged is Section VI, which is quoted
above in its entirety.

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

The Plaintiff has employed the exact tactic that the Supreme Court has instructed the federal courts to renounce – masquerading legal conclusions as factual allegations and asking the Court to make unwarranted factual deductions. *Iqbal*, 129 S.Ct. at 1950. In this case, the Plaintiff has provided the following factual allegations in regards to the Defendants: 1) Holtz was retained by AQMI (<u>not</u> Mirabilis), 2) that Defendants began "consulting or otherwise advising" Mirabilis and its subsidiaries and provided tax advice (but never stating that such advice was in relation to the Sunshine Companies Plan, the PBS Plan or anything else, for that matter), and 3) that Holtz became a board member and acted in such capacity.[9] Am. Compl. ¶ 31, 33, 34, 36.

While these allegations could potentially be consistent with a claim for accounting malpractice, no facts are present that "nudge the Plaintiff's claims ... across the line from conceivable to plausible." *Iqbal*, 129 S.Ct. at 1950. The factual allegations contained in the Amended Complaint merely show that the Defendants had some relation to the Plaintiff at one point in time or another. Essentially, the Plaintiff is asking the Court to make the unwarranted deduction that because the Defendants were involved with Mirabilis in some way, that the Defendants should have advised the Plaintiff of the liability associated with the PBS Plan and the Sunshine Companies Plan. However, this issue is entirely dependent upon what the Defendants were hired to do – *i.e.* what the Defendants duty was to the Plaintiff – and the Amended Complaint never alleges this essential element of the Plaintiff's claims.

In stating a claim for professional malpractice, it is not sufficient to merely assert a professional relationship between a plaintiff and defendant. Instead, "it is essential to allege the relationship existed with respect to the acts or omissions upon which the malpractice claim is

---

[9] This allegation against Mr. Holtz is a claim based on his status as a director of Mirabilis. Any claim against Mr. Holtz in his director capacity is separate from a professional malpractice claim. Mirabilis can not merge two separate claims into one.

Tew Cardenas LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

based." *Maillard v. Dowdell*, 528 So.2d 512, 514 (Fla. Dist. Ct. App. 1988); *see also Kates v. Robinson*, 786 So.2d 61, 64 (Fla. Dist. Ct. App. 2001).[10] This standard is extremely important because an accountant's duties depend on what he or she was hired to do. For example, an accountant hired to perform due diligence for acquisitions of companies has no duty to provide advice on unrelated transactions or to detect internal fraud within the corporation.[11]

The Amended Complaint contains many factual allegations about the PBS Plan and Sunshine Companies Plan, but no factual allegations as to what the Defendants duties were in relation to the alleged omissions associated with those Plans. The Plaintiff exploits facts that could as easily be consistent with a finding that Defendants properly performed their accounting duties as with a claim of accounting malpractice. Where a defendant's alleged conduct may be consistent with unlawful conduct, but is more likely explained by lawful conduct, it does not meet the plausibility standard set forth by *Twombly*. *Iqbal*, 129 S.Ct. at 1950 (citing to *Twombly*, 550 U.S. at 551).

Thus, applying the Supreme Court's standard to this case, the complaint must contain facts plausibly showing that the Defendants were engaged by the Plaintiff to provide advice related to the Sunshine Companies Plan and PBS Plan as defined in the Amended Complaint.

---

[10] Although these cases deal with legal malpractice, the standards apply with equal force to accounting malpractice claims. *See Glucksman v. Persol North America, Inc.*, 813 So.2d 122, 125 (Fla. Dist. Ct. App. 2002) (noting the similarities between accounting and legal malpractice claims as both are considered professional malpractice claims).

[11] This example is exactly what happened in this case. Therefore, it is imperative that Plaintiff pleads with some type of precision the duty owed by Defendants. Prior to the filing of the instant suit, the Plaintiff alleged accounting malpractice associated with due diligence performed by Rachlin for the acquisition of ten companies (unrelated to the PBS Plan or the Sunshine Companies Plan) by Mirabilis. As it became clear that such a theory would not pass muster, the Plaintiff's theory transformed into an active misrepresentation claim – that Rachlin advised Mirabilis it could use payroll taxes to fund its operations and affiliated companies. When that theory proved to lack merit, Plaintiff's counsel moved to a theory that Rachlin failed to advise Plaintiff that it could not use payroll taxes for such purposes.

9

This, the Amended Complaint does not allege. Rather, the Plaintiff asks the Court to make an unsupported, conclusory deduction rather than providing the necessary factual allegations to support their claims.

Finally, when "[d]eterming whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its own judicial experience and common sense." *Iqbal*, 129 S.Ct. 1950. Therefore, the court is not required to, nor should it according to the Supreme Court's instructions, put on blinders as to the reality of this case. Mirabilis, whose principal – Amodeo – admitted that he full well understood his obligations to the Internal Revenue Service, attempts to seek a recovery from professionals based upon a theory that they should be responsible, under theories grounded in negligence, for the debtor's criminal conduct. The limits which Mirabilis has taken to sustain such an implausible theory cannot be ignored. The Court should require a pleading by Mirabilis that carefully and specifically identifies that duty that was breached by Defendant. Thus, the Amended Complaint should be dismissed.

### III.    The Complaint is an Impermissible Shotgun Pleading

Not only does the Amended Complaint lack necessary factual allegations, but the allegations that are pled are extremely unclear and confusing. "The failure to identify claims with sufficient clarity is a shotgun pleading." *Beckwith v. Bellsouth Communications, Inc.*, 146 Fed.Appx. 368, 371 (11th Cir. 2005). This failure occurs when the complaint is so vague and ambiguous that the defendants cannot reasonably be required to frame a responsive pleading. *Byrne v. Nezhat*, 261 F.3d 1075, 1128 (11th Cir. 2001). Although shotgun pleadings are often thought of as those that incorporate every antecedent allegation by reference into each subsequent claim for relief, a complaint is also considered to be a shotgun pleading and should

be dismissed where the result is the same and the allegations cannot be adequately determined. *See, e.g., Outridge v. Quality Recovery Serv., Inc.,* No. 6:06-cv-1866-Orl-31JGG, 2007 WL 1521513, \*3 (M.D. Fla. May 22, 2007) (Presnell, J.); *McMahon v. Hunter,* No. 2:06-CV-00179-34DNF, 2007 WL 1952906, \*3 (M.D. Fla. July 2, 2007) (Howard, J.) (holding that when neither the defendants nor the court can decipher which facts relate to which claims, the complaint is a shotgun pleading).

The Plaintiff's Amended Complaint is the quintessential example of a shotgun pleading as it is impossible to determine what the Plaintiff is alleging and against whom. First, as described above, it is impossible to conclude what the Plaintiff alleges is the Defendants' duty to the Plaintiff. It is also indeterminable what conduct should be attributed to the named Defendants in this adversary proceeding. Rachlin, Marrero and Holtz all had different roles, yet the Complaint continuously lumps all of the Defendants together without regard to who made what statements, who engaged in what actions, or who gave what advice. Instead the Plaintiff has cynically divided the allegations against the various professionals into four (4) separate, yet practically identical complaints against the law firms and accounting firms.

Additionally, it cannot be determined from the Amended Complaint in what capacity the Defendants are being sued. The Amended Complaint alleges that this action stems from the Defendants' "involvement and representation of" Mirabilis as "accountants/agents." Am. Compl., p. 2. The capacity in which the Defendants acted determines the duty owed to the Plaintiff. For example, if the Defendants' role was to correspond with the IRS on behalf of Mirabilis (*i.e.* Defendant acting in their capacity as agent) versus if the Defendants role was to provide due diligence for the acquisition of various companies (*i.e.* acting in their capacity as accountant), the corresponding duties would be dramatically different.

This point is further amplified by the Plaintiff's allegations in regards to Holtz's role with Mirabilis. The Amended Complaint alleges that Holtz acted as a board member of Mirabilis, became Chairman of the Board of Directors, and "even attended meetings with the IRS during his employment at Rachlin and as a board member of Mirabilis, regarding the legality of the PBS Plan." Am. Compl. ¶¶ 35-37 (emphasis added). Therefore, the Plaintiff directly alleges that Holtz was acting in his capacity as board member, not as an accountant, but yet the Amended Complaint is one for professional malpractice.

Equally as troubling is the complete absence of factual allegations surrounding Jose Marrero's involvement with the Plaintiff. The title of Section VI, which contains the supposed factual allegations related to the Defendants, only refers to the "retention and involvement of Laurie Holtz by Mirabilis." Am. Compl., p. 6.    The Plaintiff alleges in the first paragraph of Section VI that Holtz was retained by AQMI (Am. Compl. ¶ 31) and then jumps to the allegation that both Holtz and Marrero were employed by Rachlin (Am. Compl. ¶ 32). The Amended Complaint never states what Jose Marrero was hired to do, how he became involved with the Plaintiff, or what the scope of his involvement was with the Plaintiff. The Plaintiff's claims appear to be that because Laurie Holtz and Jose Marrero were somehow involved with the Plaintiff, and because, by way of their profession, they were accountants at the time of their involvement with the Plaintiff, they should have provided the advice that the Sunshine Companies Plan and PBS Plan were illegal. Obviously such allegations fail to state a claim for professional malpractice.

Without being able to determine the foregoing, Defendants cannot reasonably be expected to frame an answer to the Amended Complaint.    The judicial work that results from a shotgun pleading is far more time consuming than the work required up front to prevent the case

12

from proceeding beyond the pleadings until the issues are reasonably well defined. *Outridge*, 2007 WL 1521513 at *2. The District Court has directed courts to *sua sponte* dismiss such pleadings even if no motion has been made by the parties. *McWhorter,* 2009 WL 92846 at *2.

> Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice. The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard. Wasting scarce judicial and parajudicial resources impedes the due administration of justice, and, in a very real sense, amounts to obstruction of justice.

*Byrne,* 261 F.3d at 1131. "The importance of using the Rules to uncover bogus claims and defenses, thereby reducing the parties' dispute to its bare essentials, cannot be overemphasized." *Id.* at 1132.

In this case, it is especially important to establish by whom and against whom the claims are being made because Florida is a comparative fault state. Fla.Stat. § 768.61(2) (stating that "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery"). "Experience teaches us, unless cases are pled clearly and precisely, issues are not controlled, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Beckwith,* 146 Fed.Appx. at 372. Because the Plaintiff has asserted the same claims against different defendants in different proceedings, a primary focus of the discovery process will almost certainly be on what and how much harm each defendant was responsible for in order to determine damages. If the Complaint were to stand as it is, discovery would be a nightmarish process and the deleterious effects of a shotgun pleading would become glaringly apparent.

TEW CARDENAS LLP
Four Seasons Tower, 15th Floor, 1441 Brickell Avenue, Miami, Florida 33131-3407 • 305-536-1112

## **CONCLUSION**

The Amended Complaint fails to allege the most basic element of the Plaintiff's claim, the duty owed to the Plaintiff. Furthermore, the Amended Complaint is incomprehensible and is precisely what qualifies a shotgun pleading. It would not only be unfair to require the Defendants to answer such a complaint, it would lead to a myriad of problems as the case proceeds and be a waste of judicial resources.

As was noted by the Eleventh Circuit in *Byrne*, "[p]laintiffs file shotgun complaints and include frivolous claims to extort the settlement of a meritorious claim; worse yet, they file shotgun complaints to extort the settlement of unmeritorious claims." 261 F.3d at 1130. "It goes without saying that a plaintiff with a solid case does not need to file a shotgun complaint." *Id.* This case is a prime example of such a situation: the Plaintiff is flinging around names, allegations and irrelevant facts in a shameless attempt to seek a monetary recovery to fund the estate (and its attorneys' fees). The Federal Rules of Civil Procedure and binding case law do not permit such a misuse of the judicial process.

WHEREFORE, the Defendants MarcumRachlin, f/k/a Rachlin Cohen & Holtz, LLP, Laurie S. Holtz and Jose I. Marrero respectfully request that this Court dismiss Plaintiff Mirabilis Ventures, Inc.'s Amended Complaint (D.E. 24) and for such other relief as the Court deems just and proper.

Respectfully Submitted,

TEW CARDENAS LLP
*Attorneys for the Defendants*
1441 Brickell Avenue
Four Seasons Tower, 15th Floor
Miami, FL 33131
Phone: (305) 536-1112
Fax: (305) 536-1116
E-Mail: JAD@tewlaw.com


  /s/Joseph A. DeMaria, Esq.____
C. Thomas Tew, P.A.
Florida Bar No. 098160
Joseph A. DeMaria, Esq.
Fla. Bar No. 764711


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of September, 2009, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: Elizabeth A. Green, Esq. (Egreen@lseblaw.com), Latham, Shuker, Eden & Beaudine, LLP, 390 North Orange Avenue, Suite 600, Orlando, Florida 32801.


                           /s/ JOSEPH A. DEMARIA
                           JOSEPH A. DEMARIA, ESQ.
531179_1